**KAZEROUNI LAW GROUP APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DR. BRETT GIDNEY and KERRY GIDNEY, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**CUSTOM COMMERCIAL DRY CLEANERS, LLC d/b/a FRSTEAM BY CUSTOM COMMERCIAL; and COHN, ROBERTS, AND ASSOCIATES, LLC,**<br><br>Defendants. | **Case No.:**<br><br><u>**CLASS ACTION**</u><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. §§ 1692, *ET SEQ.*;**<br>2. **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE §§ 1788, *ET SEQ.*;**<br>3. **UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

## INTRODUCTION

1.      Plaintiffs DR. BRETT GIDNEY ("Dr. Gidney") and KERRY GIDNEY ("Ms. Gidney) (together, "Plaintiffs"), bring this action, individually and on behalf of all others similarly situated, for damages and injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendants CUSTOM COMMERCIAL DRY CLEANERS, LLC d/b/a FRSTEAM BY CUSTOM COMMERCIAL ("FRSTeam") and COHN, ROBERTS, AND ASSOCIATES, LLC ("CRA") (together, "Defendants") with regard to Defendants' predatory and unfair debt collection and business practices.

2.      Indeed, as alleged herein, FRSTeam intentionally, knowingly, and unfairly charges consumers (including Plaintiffs) storage fees in amounts not owed or authorized by law or contract by retroactively increasing such fees (after attempting to collect on them) resulting in violations of California's debt collection law and constituting unfair and unlawful business practices. Similarly, CRA is in violation of state and federal debt collection laws by contacting consumers (including Plaintiff) to collect a debt before 8:00 a.m. and also collecting a debt not owed or authorized by law or contract.

3.      Specifically, Plaintiffs allege that CRA's actions described herein are in direct violation of the: (1) Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and (2) Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq*. ("RFDCPA").

4.      Similarly, FRSTeam's actions described herein are in direct violation of the: (1) the RFDCPA and (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL").

5.      In enacting the Fair Debt Collection Practices Act ("FDCPA"), Congress's purpose was to eliminate abusive debt collection practices by debt collectors, to ensure debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged and to promote consistent State action

to protect consumers against debt collection abuses.

6. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

7. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge. The facts alleged herein come from Plaintiffs' personal knowledge, Plaintiffs' research, and Plaintiffs' Counsel's investigation and research, taking into account that Defendants intentionally obscure and conceal their actions to hide their unfair and unlawful business practices.

8. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

9. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

10. All violations alleged regarding the FDCPA and RFDCPA are material violations as these violations would limit the ability of a hypothetical least sophisticated debtor to make an intelligent choice as to the alleged debt, determine

_____

[1] Cal. Civ. Code §§ 1788.1 (a)-(b).

whether the debt was owed, and to actions that should be taken to resolve the alleged debt.

**JURISDICTION AND VENUE**

11.     Original subject matter jurisdiction is valid pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the FDCPA, 15 U.S.C. §§ 1692, *et seq*. Jurisdiction of this Court also arises pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over the California state law claims under the RFDCPA and UCL.

12.     Personal jurisdiction and venue are proper in the Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Plaintiffs reside within this judicial district; (2) the conduct complained of herein occurred within this judicial district; and (3) Defendants conducted business within this judicial district at all times relevant.

13.     Specifically, Defendants abusively and unfairly sought to collect an illegal debt, which occurred while Plaintiffs were located and resided in the County of Santa Barbara, State of California, which is within this judicial district.

**PARTIES**

14.     Plaintiffs are individuals (and natural persons, as that term is used in 15 U.S.C. § 1692, *et seq*.), residing in the County of Santa Barbara, State of California.

15.     Plaintiffs are each a person from whom a debt collector sought to collect a consumer debt, which was due and owing or alleged to be due and owing from Plaintiffs. Plaintiffs are each therefore a "consumer" as that term is defined by 15 U.S.C. §1692a(3) and Cal. Civ. Code §1785.3(b). Additionally, Plaintiffs are each a "debtor," as that term is defined by Cal. Civ. Code § 1788.2(h).

16.     Upon information and belief, FRSTeam is a California limited liability company that offers electronics, textile, and fabric restoration services, with its headquarters located at 3201 Investment Blvd., Suite A, Hayward, California 94545, with offices also located in Alpharetta, Georgia.

17.     Plaintiffs are informed and believe, and thereon allege, that FRSTeam regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due. In doing so, FRSTeam uses an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, and is therefore a "debt collector" as that phrase is defined by Cal. Civ. Code § 1788.2(c).

18.     Upon information and belief, CRA is a debt collection law firm with its headquarters in Cleveland, Ohio. Plaintiffs are also informed and believe that CRA is authorized to and regularly conducts business, including debt collection, within the State of California and within the County of Santa Barbara, within this judicial district.

19.     CRA regularly and primarily, collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another (and is therefore a third-party debt collector). CRA in the ordinary course of business, regularly, on behalf of itself and/or others, engages in debt collection and is therefore a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c).

20.     This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer transaction.  As such, this action arises out of a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

## FACTUAL ALLEGATIONS

21.     At all times relevant, Plaintiffs are individuals residing within the State of California. Plaintiffs are informed and believe, and thereon allege, that at all times relevant, Defendants conducted business in the State of California and within this district.

22.     Sometime prior to 2022, Plaintiffs incurred a financial obligation to FRSTeam, were money, property, or their equivalent, which are due or owing, or

alleged to be due or owing, from Plaintiffs to FRSTeam were collected upon and were therefore "debt(s)" as that term is defined by California Civil Code § 1788.2(d) and 15 U.S.C. § 1692a(5).

23. Specifically, on or about November 3, 2021, Plaintiffs entered into a contract with FRSTeam soley to restore Plaintiffs' personal household items that were damaged due to a sewage leak within their personal residence that occurred on or about November 1, 2021.

24. Upon signing this contract with FRSTeam, Plaintiffs received a text from an employee from FRSTeam named Eric Seadler informing Plaintiffs that FRSTeam was coming to Plaintiffs' personal residence to remove the damaged personal items so that they could be cleaned by FRSTeam.

25. Shortly thereafter, FRSTeam arrived at Plaintiffs' home to remove every item in the damaged area, including TVs mounted on walls and items that were over six feet off the ground, despite the fact that the water damage only reached at most, 2 inches off the ground.

26. On December 16, 2021, FRSTeam sent Plaintiffs, via email, an inventory list of all the items FRSTeam removed from their home to be cleaned.

27. From December of 2021 through July of 2022, Plaintiffs did not receive any further communications from FRSTeam regarding the status of their items.

28. Plaintiffs later came to find out that FRSTeam was sending monthly invoices directly to Plaintiff's insurance company from November 16, 2021 to approximately June of 2022.

29. During this time, FRSTeam charged Plaintiffs: (1) $425.61 for hard contents restoration services; (2) $6,292.80 for electronic items pick up and cleaning; and (3) $5,852.01 for soft contents items pick up and cleaning, for a total of $12,570.42 in cleaning charges.

30. From about December of 2021 through January of 2023, FRSTeam also charged Plaintiffs: (1) $300 in storage fees per month for textiles; (2) $300 in storage

fees per month for electronics; and (3) $150 in storage fees per month for hard contents, for a total of $750 per month in alleged storage fees.

31. FRSTeam also sent billing invoices for these monthly storage fees at the $750 per rate to Plaintiffs in an attempt to collect on this debt.

32. On or about July 15, 2022, FRSTeam began to send billing invoices directly to Plaintiffs, in an attempt to collect the alleged debt for the cleaning services and for the storage fees.

33. The first time Plaintiffs became aware of any storage costs was upon reviewing this first July 15, 2022, correspondence from FRSTeam attempting to collect on this alleged debt.

34. Indeed, in that July 15, 2022 email, FRSTeam indicated that there were $6,000 in storage costs outstanding from November 2021 to July 2022 in addition to the $12,570.42 fee for the cleaning.

35. Prior to July 15, 2022, Plaintiffs did not receive any written communication, emails or telephone calls from FRSTeam concerning the status of their items or the fact that storage fees would begin to accrue. Nor did Plaintiffs consent and agree in any manner to have their items placed in storage after the initial cleaning. It was Plaintiffs' understanding that FRSTeam solely would be handling the cleaning of their personal items.

36. Plaintiffs disputed the storage fees with FRSTeam contending they were unfairly charged for storage fees they did not authorize or know were beginning to accrue.

37. On or about July 18, 2022, Plaintiffs paid the cleaning bill of $12,570.42 to FRSTeam. However, Plaintiffs never received their items back from FRSTeam due to the dispute regarding the unauthorized storage fees.

38. Frustrated that FRSTeam was withholding the return of their personal items under the guise of an apparent bait-and-switch scheme, Plaintiff disputed the $12,570.42 charge with American Express, and were refunded the full amount from

their bank on or about September 25, 2022.

39. On October 10, 2022, after numerous futile emails and phone calls inquiring about the status of Plaintiffs' items, FRSTeam sent Plaintiffs an email indicating "it is company policy to collect the payment for all services provided prior to making a final delivery of your belongings, this includes storage."

40. FRSTeam also represented to Plaintiffs that FRSTeam has "halted the accrual of storage fees after 07/18/22" and would give Plaintiffs about 2.5 months of storage for fee.

41. Despite these representations, on December 7, 2022, FRSTeam issued an invoice for $3,750 for five months of storage at $750 per month from the period of August 2022 through December 2022.

42. On January 27, 2023, FRSTeam issued yet another invoice in the amount of $1,500 for two months of storage at $750 per month from the period of January 2023 through February 2023 (despite the fact the alleged February 2023 storage fees were not yet incurred as of the date FRSTeam attempted to collect on that debt).

43. Then, on March 28, 2023, FRSTeam retroactively attempted to increase the monthly storage fees (which were already not agreed to by Plaintiffs) from $750 a month to a staggering <u>$2,100 per month with absolutely no explanation</u>.

44. The March 28, 2023 invoice lists the following line item description for $20,250.00: "Storage Charges Hard Contents (12/04/2021 - 02/28/2023) - Correction: The Difference of the CON Storage Rate for the previous period (the storage rate per month was incorrect)."

45. Upon reviewing this March 28, 2023 invoice, Plaintiffs relied on FRSTeam's representations that the debt was legal, when in fact that is not true as it encompasses retroactive storage fees not authorized by law or contract. As a result, FRSTeam's representations concerning the debt impacted Plaintiffs' ability to intelligently respond to FRSTeam and to make decisions regarding the debt.

46. From March 28, 2023 and on, FRSTeam continued to charge Plaintiffs $2,100 per month for storage and has held Plaintiffs' liable for $20,250.00 in retroactive storage fees.

47. On or about June 29, 2023, CRA sent Plaintiffs an email attempting to collect on the alleged debt with FRSTeam, indicating Plaintiffs owed FRSTeam an outstanding balance of $61,602.13 for the cleaning and storage fees. Included within this alleged debt was the retroactive storage fees of $2,100 a month for 20 months (totaling $42,000), plus the $12,570.42 cleaning fee and $7,031.71 in interest.

48. This June 29, 2023 email was a "communication" as that term is defined under 15 U.S.C. § 1692a(2), from CRA in relation to the alleged "debt(s)."

49. The June 29, 2023 email stated in part: "This notice is to advise you that Cohen, Roberts & Associates, LLC has been hired to represent FRSTeam by Custom Commercial with regards to the collection claim of past due monies owed on a contracted debt."

50. The email further stated that Plaintiffs had 30 days to pay this alleged $61,602.13 debt.

51. Upon reviewing this communication from CRA, Plaintiffs relied on CRA's representations that the debt was legal, when in fact that is not true as it encompasses retroactive storage fees not authorized by law or contract. As a result, CRA's representations concerning the debt impacted Plaintiffs' ability to intelligently respond to CRA and to make decisions regarding the debt.

52. Then on July 6, 2023, at **7:22 a.m.** pacific standard time (Plaintiffs' local time zone), Plaintiffs received another "communication" from CRA, attempting to collect on the $61,602.13 debt.

53. This early morning communication from CRA collecting the alleged debt caused Plaintiffs to become annoyed, frustrated, and caused Plaintiffs emotional distress upon receipt. Indeed, Plaintiffs were shocked that CRA was communicating with Plaintiffs regarding an alleged debt prior to normal business hours.

54. Upon information and belief, this time was reasonably known (or should have been known) by CRA as inconvenient for Plaintiffs. This time is also outside normal business hours and is an unusual time to conduct business.

55. Throughout June and July of 2023, CRA continued to contact Plaintiffs in an attempt to collect on the alleged debt despite the fact that such debt included a retroactive increase in storage fees and was not authorized by law or contract.

56. Accordingly, as a direct result of FRSTeam's unfair and unlawful business practices, Plaintiffs and other similarly situated consumers are being charged arbitrary and unconscionable retroactive storage costs.

57. Plaintiffs have spent countless hours disputing such retroactive fees with FRSTeam without success.

58. Through the conduct alleged herein, CRA, at a minimum, has violated 15 U.S.C. § 1692c(a)(1), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17, by contacting and harassing Plaintiffs and others similarly situated consumers in connection with the collection of an alleged debt during "unusual hours." Thus, CRA has also violated the RFDCPA, which incorporates by reference this section of the FDCPA. *See* Cal. Civ. Code § 1788.17.

59. As alleged herein, FRSTeam and CRA also collected, and sought to collect, an alleged consumer debt from Plaintiff (and others similarly situated) despite Defendants' false representations concerning the legal status of the alleged debt, as Plaintiff and those similarly situated do not owe the alleged debts resulting from retroactive fees. As a result, Defendants are in violation of 15 U.S. Code § 1692e(2), which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17.

60. Additionally, by applying retroactive storage fees, FRSTeam and CRA have also violated 15 U.S.C. § 1692f including subsection (1) (which is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17) by engaging in unfair or unconscionable means to collect or attempt to collect the alleged debt and attempting

to collect an amount not authorized by agreement or permitted by law.

61. Defendants' charge and collection of said retroactive fees also constitutes false, deceptive, misleading means to collect a debt and in violation of 15 U.S.C. §§1692e(10). Because Cal. Civ. Code 1788.17 incorporates the FDCPA, for the above reasons, Defendants violated the RFDCPA.

62. As a result, Plaintiffs continue to incur costs and have expended unnecessary time and energy as a result of Defendants' conduct as Plaintiffs are still being held liable for an illegal debt.

63. Plaintiffs and all members of the Classes have been impacted by, and face continuing harm (including a material risk of harm to their interests) arising out of Defendants' violations and misconduct as alleged herein.

64. As of the date of filing of this Complaint, FRSTeam continues to hold Plaintiffs' personal and household items, with no intention to return them. CRA also continues to actively collect on the alleged debt that is not owed.

65. Upon information and belief, other consumers are facing a substantially similar harm as FRSTeam has a policy and practice of charging retroactive storage fees and refusing to return consumer's personal items until such illegal fee is paid.

### CLASS ACTION ALLEGATIONS

66. Plaintiffs bring this action on behalf of Plaintiffs and all others similarly situated.

67. Plaintiffs represent, and are a member of, the FDCPA Class, pursuant to Fed. R. Civ. P. 23(b)(3), which is defined as follows:

> All persons within the United States who CRA contacted before 8am or after 9pm at the person's location in an attempt to collect a debt within the one-year preceding the filing of this Complaint.

68. Plaintiffs represent, and are a member of, the RFDCPA Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

All persons with residential address within the State of California from whom Defendants collected or sought to collect retroactive storage fees from within one year prior to the filing of this Complaint.

69. Plaintiffs represent, and are a member of, the UCL Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(3) and/or (b)(2), which is defined as follows:

All persons in the State of California from whom CRA charged retroactive storage fees within the four years prior to the filing of the Complaint.

70. The FDCPA Class, RFDCPA Sub-Class and UCLA Sub-Class are together referred to as the "Classes."

71. Excluded from the Classes are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

72. Plaintiffs reserve the right to redefine the Classes, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

73. The Classes that Plaintiffs seek to represent contains numerous members and are ascertainable including, without limitation, by using Defendants' records to determine the size of the Classes and to determine the identities of individual Class members.

**Numerosity**

74. The members of the Classes are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Classes is currently unknown to Plaintiffs at this time. However, given that, on information and belief, CRA routinely collects on debts before 8am or after 9pm and FRSTeam has a course of conduct of charging retroactive storage fees to hundreds of consumers, it is

reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

75.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.    Those common questions of law and fact include, without limitation, the following:

a) Whether CRA's conduct of contacting consumers before 8 a.m. and after 9 p.m. violated FDCPA;

b) Whether CRA sought to collect a debt during "unusual hours";

c) Whether Defendants sought to collect a debt on an amount not owed or unauthorized by law;

d) Whether FRSTeam retroactively increases its storage fees;

e) Whether Defendants' conduct violated the RFDCPA;

f) Whether FRSTeam's conduct violated the UCL;

g) Whether members of the FDCPA Class are entitled to the remedies under the FDCPA;

h) Whether members of the FDCPA Class are entitled to an awards of reasonable attorneys' fees and costs of suit pursuant to the FDCPA;

i) Whether members of the RFDCPA Sub-Class are entitled to the remedies under the RFDCPA;

j) Whether members of the RFDCPA Sub-Class are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the RFDCPA; and,

k) Whether Defendants can satisfy the bona fide error affirmative defense, assuming such an affirmative defense is raised.

**Typicality**

76.    Plaintiffs are qualified to, and will, fairly and adequately protect the

interests of each Class member with whom they are similarly situated, and Plaintiffs'
claims (or defenses, if any) are typical of all members of the Class and Sub-Class, as
demonstrated herein.

77. Plaintiffs represent and is a member of the Classes because Defendants
attempted to collect a consumer debt from Plaintiffs that was not owed or authorized
by law and because CRA contacted Plaintiffs before 8 a.m. to collect said debt.
Consequently, the claims of Plaintiffs are typical of the claims of each Class member
and Plaintiffs' interests are consistent with and not antagonistic to those of the other
members of the Classes that Plaintiffs seek to represent.

78. Plaintiffs and all members of the Classes have been impacted by, and
face continuing harm arising out of, Defendants' violations or misconduct as alleged
herein.

**Adequacy**

79. Plaintiffs are qualified to, and will, fairly and adequately protect the
interests of each member of the Class and Sub-Classes with whom Plaintiffs are
similarly situated, as demonstrated herein. Plaintiffs acknowledge that Plaintiffs have
an obligation to make known to the Court any relationship, conflicts, or differences
with any members of the Classes. Plaintiffs' attorneys, the proposed class counsel,
are versed in the rules governing class action discovery, certification, and settlement.

80. In addition, the proposed class counsel is experienced in handling
claims involving consumer actions and violations of the FDCPA, RFDCPA and
UCL. Plaintiffs have incurred, and throughout the duration of this action, will
continue to incur costs and attorneys' fees that have been, are, and will be,
necessarily expended for the prosecution of this action for the substantial benefit of
each member of the Classes. Neither Plaintiffs nor Plaintiffs' counsel have any
interests adverse to those of the other members of the Classes.

**Predominance**

81. Questions of law or fact common to the members of the Classes

predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiffs and members of the Classes are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

82. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class and Sub-Classes is impracticable and questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes. Even if every individual member of the Class and Sub-Classes could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

83. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each member of the Classes. Further, it will prevent the very real harm that would be suffered by numerous members of the Classes who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiffs anticipate no difficulty in the management of this case as a class action.

84. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of

CLASS ACTION COMPLAINT

those non-party members of the Classes to protect their interests.

85. The prosecution of individual actions by members of the Classes would establish inconsistent standards of conduct for Defendant.

86. Defendants have acted or refused to act in ways generally applicable to the Classes, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class and Sub-Classes as a whole. Likewise, Defendants' conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

87. The Classes may also be certified because:

    (a) the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards of conduct for Defendants;

    (b) the prosecution of separate actions by individual members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

    (c) Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Class and Sub-Class as a whole.

88. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto.

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**15 U.S.C. § 1692, *ET SEQ.***
**[ON BEHALF OF PLAINTIFFS AND THE FDCPA CLASS; AGAINST CRA ONLY]**

89.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

90.   Communication by a debt collector to a consumer in relation to collection of a debt may not occur "at any unusual time or place [] which should be known to be inconvenient to the consumer," and "shall assume that the convenient time for communication with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location." 15 U.S.C. §1692c(a)(1).

91.   CRA is in violation of 15 U.S.C. §1692c(a)(1) communicating with Plaintiffs during "unusual time[s]" in attempt to collect a consumer debt.

92.   As a result, Plaintiffs and the FDCPA Class seek an award of: (1) actual damages pursuant to 15 U.S.C. § 1692k(a)(1); (2) statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from CRA.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
**CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)**
**[ON BEHALF OF PLAINTIFFS AND THE RFDCPA SUB-CLASS; AGAINST ALL DEFENDANTS]**

93.   Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

94.   The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

95.   California Civil Code § 1788.17 provides in pertinent part that, "…every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be

subject to the remedies in Section 1692k of, Title 15 of the United States Code."

96. Plaintiffs are natural persons who resides in the State of California, from whom a debt collector collected and/or sought to collect a consumer debt which was alleged to be due and owing from Plaintiffs and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

97. Plaintiffs are informed and believe, and thereon allege, that Defendants, in the ordinary course of business, regularly, on behalf of themselves or others, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), and are therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

98. The alleged financial obligations of Plaintiffs on services rendered were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

99. By collecting or attempting to collect on a debt no authorized by contract or law, Defendants committed multiple violations of the RFDCPA, as alleged above.

100. As a result of each and every violation of the RFDCPA, Plaintiffs and the RFDCPA Sub-Class are entitled to: (1) actual damages pursuant to Cal. Civ. Code § 1788.30(a); (2) statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and (3) reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) against each Defendant.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
### [ON BEHALF OF PLAINTIFFS AND THE UCL SUB-CLASS; AGAINST FRSTEAM ONLY]

101. Plaintiffs reallege and incorporate herein by reference the allegations

contained in all preceding paragraphs, and further allege as follows:

102.   The UCL defines "unfair competition" to include any "unlawful, unfair or fraudulent" business act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

103.   The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

104.   Plaintiffs and Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code § 17201. Cal. Bus & Prof. Code § 17204 authorizes a private right of action on both an individual and representative basis.

105.   Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (§§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, private plaintiffs who have suffered a financial injury may sue to obtain relief for others.

### *"Unfair" Prong*

106.   A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims, who were forced to incur debts possessing an unlawfully charged interest rate.

107.   At a date presently unknown to Plaintiffs, but at least four years prior to the filing of this action, and as set forth above, Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*., as described herein including by charging consumers (including Plaintiffs) retroactive storage fees.

108.   Defendant could and should have furthered its legitimate business

interests by not charging and billing for a certain storage fee rate only to turn around and retroactively increase such fees.

109. Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant charged unreasonable costs and retroactively increased the storage fee on a debt.

110. The harm to Plaintiffs and the UCL Sub-Class Members grossly outweighs the utility of Defendant's practices as there is simply no utility to the practices of Defendant in charging unconscionable costs or retroactively increasing fees.

111. Plaintiffs and other members of the Class could not have reasonably avoided the injury suffered by each of them.

112. Plaintiffs reserve the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

### *"Unlawful" Prong*

113. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

114. Defendant's acts and practices alleged above constitute unlawful business acts or practices as Defendant has violated the RFDCPA as described in Plaintiff's Second Cause of Action above.

115. These acts and practices alleged were intended to or did result in violations of RFDCPA.

116. Defendant has and will continue to unlawfully increase fees retroactively and continue to collect on those unlawful amounts unless enjoined.

117. Plaintiffs continue to be bound by Defendant's unreasonable cost and fees and will continue to have to make payments towards a debt that is not authorized by law unless Defendant is enjoined.

118. Plaintiffs, and all those similarly situated in the UCL Sub-Class, seek

via the powers granted to Plaintiffs pursuant to Cal. Bus. Prof. Code § 17204 to act a Private Attorney General and seek public injunctive relief to benefit the general public directly by bringing an end to Defendant's unfair business practices, which threaten future injury to the general public via continuing to charge outlandish costs and retroactively increase those fees.

119. Additionally, Plaintiffs seek this Court grant an injunction requiring Defendant to immediately cease charging unconscionable storage costs and retroactively increasing such fees, as well as enjoin Defendant from collecting on those unlawful amounts. Such an injunction would benefit the public at large because the public could then not be charged illegal and egregious fees by Defendant, nor fooled into believing they owe such an amount.

120. Plaintiff also seeks restitution as afforded by Cal. Bus. Prof. Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Classes, prays for the following relief:

- That this action be certified as a Class Action, establishing the Classes and any appropriate sub-classes that the Court may deem appropriate;
- Appointing Plaintiffs as the representatives of the Classes;
- Appointing the law firms representing Plaintiffs as Class Counsel;
- Pre-judgment and post-judgment interest;
- Costs of suit;
- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;

//
//
//

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT ('FDCPA")
### 15 U.S.C. § 1692 *ET SEQ.*
### [ON BEHALF OF THE FDCPA CLASS]

- An award of actual damages pursuant to 15 U.S.C § 1692k(a)(1);

- An award of statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(B) and/or the lesser of $500,000.00 or one percent (1%) of the net worth of the Defendant pursuant to 15 U.S.C. § 1692k(a)(2)(B);

- An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

- Any other relief this Court should deem just and proper.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL. CAL. CIV. CODE §§ 1788-1788.32 ("RFDCPA")
### [ON BEHALF OF THE RFDCPA SUB-CLASS]

- An award of actual damages pursuant to 15 U.S.C § 1692k(a)(1);

- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b), against each named Defendant individually and/or the lesser of $500,000.00 or one percent (1%) of the net worth of the Defendant pursuant to 15 U.S.C. § 1692k(a)(2)(B);

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c), against each named Defendant individually;

- Any other further relief that the court may deem just and proper.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"),
### CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
### [ON BEHALF OF THE UCL SUB-CLASS]

- Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code §§ 17203 & 17204, permanently and

immediately prohibiting Defendant from engaging in the unlawful conduct alleged herein, including but not limited the act of retroactively increasing fees, and for Defendant to comply with the RFDPCA.

- An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the UCL Sub-Class and, also, to restore to Plaintiff and members of the UCL Sub-Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

- Any other further relief that the court may deem just and proper.

### JURY DEMAND

121. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: August 23, 2023                    Respectfully submitted,

                                          **KAZEROUNI LAW GROUP, APC**

                                          By:   s/ ABBAS KAZEROUNIAN
                                                ABBAS KAZEROUNIAN, ESQ.
                                                ak@kazlg.com
                                                ATTORNEY FOR PLAINTIFF